UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 0:22-cv-61147-WPD

DR. TERRY RZEPKOSKI and
KRISTEN ASSELTA, on behalf
of the Nova University Defined
Contribution Plan,

    Plaintiffs,

v.

NOVA SOUTHEASTERN
UNIVERSITY, INC.,

    Defendant.
_____/

**PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AGREEMENT**

Dr. Terry Rzepkoski and Kristen Asselta ("Plaintiffs"), individually and on behalf of all others similarly situated ("Settlement Class"), and Defendant, Nova Southeastern University, Inc. ("Defendant"), have entered into a Class Action Settlement (the "Settlement") which, subject to this Court's final approval, would resolve all claims asserted in this ERISA lawsuit in exchange for a $1,500,000.00 cash payment and structural changes to the administration of the Nova University Defined Contribution Plan ("the Plan"). The proposed Settlement is fair, reasonable, adequate, and in the best interests of Settlement Class.

On October 24, 2024, this Court issued an Order preliminarily approving the Class Action Settlement. (ECF 100). The Settlement Class Administrator sent the Court-approved Notice of Settlement to all 12,239 Settlement Class members on November 29, 2024. (*See* Exhibit B, Declaration from Settlement Administrator, American Legal Claims, ¶ 6) ("ALC Decl.") The objection deadline is January 29, 2025. (*Id.* at ¶ 8.) Importantly, the Settlement Administrator estimates that 97.76% of Settlement Class members received the Notice of Settlement. (*Id.* at ¶ 6.) Thus far, not a single objection has been made. This demonstrates that, in accordance with the Court's preliminary approval Order, the settlement is fair, reasonable, and should be granted final approval.

The proposed Settlement provides an immediate benefit to the Settlement Class in the form of a $1,500,000.00 cash payment. The Settlement is the product of hard-fought litigation over nearly 2.5 years, which included substantial motion practice, including a defense motion for summary judgment, a Rule 56(d) motion to deny defendant's summary judgment motion, a motion for protective order filed by Defendant that was denied and subsequently appealed by Defendant, a motion by Defendant seeking permission to file an interlocutory appeal as to the denial of its motion for protective order, an opposition to that motion by Plaintiffs, and Plaintiffs' participation

1

in a robust pre-suit administrative remedies process that involved the exchange of more than **_100,000_** pages of documents. The case also involved the retention of knowledgeable and qualified industry experts who helped to craft pleadings, oppose defendant's motions, develop the factual record, and perform loss analyses. The case tentatively settled only after vigorous litigation and extensive arm's-length negotiations between some of the most sophisticated ERISA lawyers in the country representing each side.

Not only that, but the benefits of the Settlement must also be considered in the context of the risk that further protracted litigation might lead to no recovery, or to a smaller recovery for Plaintiffs and the proposed Settlement Class. Defendant mounted a vigorous defense at all stages of the litigation and, but for the Settlement likely would have continued to do so through all future stages of the litigation, including through possible appellate proceedings.

Moreover, the proposed Settlement (ECF 99-1, pp. 8-36) requires Defendant to retain an independent fiduciary, who will act on behalf of the Plan in reviewing the Settlement for purposes of determining and offering an opinion on whether the Settlement is fair to the Settlement Class and whether Plaintiffs' Released Claims on behalf of the Plan and the Settlement Class complies with ERISA's prohibited transaction provisions. *See* Prohibited Transaction Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003). Defendant engaged Fiduciary Counselors, Inc., to serve in this capacity, a nationally respected independent fiduciary. That report from Fiduciary Counselors, Inc. is due on or before January 29, 2025, and will be provided to the Court upon completion.

Little has changed since the Court's Order preliminarily approving the Settlement, the lack of change confirms that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiffs request that the Court enter the Final Approval Order attached as Exhibit A,

which was previously made part of the Settlement. In further support of this Motion, Plaintiffs state the following.

I.     **LITIGATION AND SETTLEMENT HISTORY.**

    A.     **Pre-Suit Investigation.**

Before filing this case, Class Counsel conducted significant in-depth research and analysis into the claims and the anticipated defenses of those claims at issue here. (*See* Exhibit C to Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs, Hill Decl., ¶¶ 10-13.)[1] Class Counsel retained and worked with industry experts during the pre-suit investigation stage. (*Id.*) Class Counsel also reviewed thousands of pages of publicly available documents, reviewed Plaintiffs' Plan documents, and worked with Plaintiffs and expert witnesses to craft the Complaint and Amended Complaint that were filed. (*Id.*)

    B.     **Exhaustion of Administrative Remedies.**

On July 8, 2022, Class Counsel (on behalf of Plaintiffs) sent a letter addressed to the "Plan Administrator" which requested certain Plan documents and submitted an administrative claim pursuant to the Plan's mandatory administrative claims review process. (*See* Exhibit C to Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs, Hill Decl., ¶ 13.) During the course of the administrative remedies process, Defendant produced over one-hundred thousand (100,000) pages of documents relevant to Plaintiffs' claims, including (1) the Plan's committee charter; (2) investment policy statement, (3) plan document and summary plan description, (4) committee meeting minutes, (5) investment advisor reports, (6) recordkeeper reports, (7) Plaintiffs' account

---

[1] To avoid duplication, contemporaneous with the filing of this Motion, Plaintiffs' Counsel is filing two master sworn declarations in support of their Motion for Attorneys' Fees and Costs. Rather than filing the declarations twice (in support of this Motion and the Motion for Attorneys' Fees and Costs), incorporates them by reference herein.

3

statements, and other documents. Class Counsel carefully scrutinized all of the documents produced. (*See id.*) The administrative review process finally came to an end on April 5, 2023.

    **C.**    **Amended Complaint, Motion Practice, and Discovery**

On May 5, 2023, Plaintiffs filed their First Amended Complaint. (ECF 24.) Defendant filed its answer on June 20, 2023. (ECF 27.) The following day, on June 21, 2023, Defendant filed a motion for summary judgment. (ECF 28.) Plaintiffs filed their opposition, which included a Rule 56(d) request, to the motion for summary judgment on September 15, 2023 (ECF 53.) Defendant filed its reply on September 20, 2024 (ECF 54.) The Court denied the motion for summary judgment on September 25, 2023. (ECF 55.)

Thereafter, Plaintiffs served written discovery requests. Defendant filed a motion for protective order seeking to effectively prevent Plaintiffs from taking any discovery in the case and to limit the evidentiary record in the case only to the documents produced by Defendant in the administrative review process. (ECF 61.) Plaintiffs opposed the motion for a protective order. (ECF 64.) Defendant filed a reply in support of its motion. (ECF 65.) On December 22, 2023, Magistrate Judge Patrick M. Hunt heard oral argument from the parties on the motion. (ECF 67.) Magistrate Judge Patrick M. Hunt denied the motion on January 19, 2024. (ECF 68.)

Defendant appealed Magistrate Judge Patrick M. Hunt's order denying its motion for a protective order on February 2, 2024. (ECF 72.) After the appeal was fully briefed, it was denied on April 12, 2024. (ECF 79.) Defendant sought interlocutory review on April 30, 2024. (ECF 80.) Defendant also moved for a stay pending its interlocutory appeal. (ECF 81.) Defendant's motion for interlocutory review and for a stay was denied on July 12, 2024. (ECF 92.)

The parties stipulated to class certification on June 20, 2024. (ECF 90.) The Court approved the stipulation on June 25, 2024. (ECF 91.) The following Class is defined as : "All persons who

were participants in or beneficiaries of the Plan, at any time between June 15, 2016, and October 24, 2024 (the "Class Period.)" (*Id.*)

        **D.**      **Settlement Negotiations.**

Class Counsel and Defendant's counsel have extensive experience handling ERISA fiduciary-breach lawsuits similar to this one. (*See, e.g.,* Exhibit D to Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs, McKay Decl., ¶¶ 3-4.) Settlement was first discussed among counsel for the parties shortly after the administrative review process ended, over a year ago. (*See* Exhibit C to Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs, Hill Decl., ¶ 25.) After extensive arms-length negotiations the parties, through counsel, reached an agreement in principle, which led to the Settlement the Court has already approved on a preliminary basis. (*Id.*)

        **E.**      **The Settlement Agreement.**

              **1.**      **Benefits to Settlement Class Members.**

The Settlement provides for a monetary payment of $1,500,000.00 as compensation to the Settlement Class. (ECF No. 99-1, Settlement Agreement § 1.24.) This "Gross Settlement Amount" will cover the independent fiduciary fees; settlement administration fees and costs; and any Class Counsel fees and costs approved by the Court. (*Id*. § 1.24, 2.1.3., 6.1.) The remaining "Net Settlement Amount" will be distributed to Settlement Class members pursuant to the proposed Plan of Allocation. (*See id.,* Plan of Allocation.)

For Settlement Class members who have Plan accounts as of the date of the distribution of the Net Settlement Amount, the distribution will be made automatically pursuant to applicable Plan terms. No claim form is required. The Settlement Administrator shall promptly notify Class Counsel as to the date(s) and amounts(s) of said allocation(s) made to Settlement Class members who are Current Participants. For Former Participants, their distributions will be made by checks

5

written to each Former Participant from the Settlement Administrator. No Former Participant whose entitlement to payment pursuant to the Plan of Allocation would be otherwise less than Fifty dollars ($50) shall receive any payment. If the settlement is granted final approval, the Settlement Administrator shall be responsible for sending checks constituting their share of the Net Settlement Amount allocated to the Former Participants as provided by the Plan of Allocation, as well as complying with all tax laws, rules, and regulations with respect to Former Participants. No claim forms will be required of Former Participants either. (*Id.* § 5.3)

Under the terms of the Settlement, within thirty (30) days of the entry of the Preliminary Approval Order, the Defendant was required to pay $100,000 into the Qualified Settlement Fund to allow for payment of initial Administrative Expenses and Independent Fiduciary Expenses that may arise before the Court's entry of the Final Approval Order and Judgment. (*See* Settlement Agreement § 4.4.) Within thirty (30) calendar days of the Effective Date of the Settlement Agreement, Defendant shall pay the remainder of the Gross Settlement Amount, $1,400,000 into the Qualified Settlement Fund. (*Id.* § 4.5.) The sum of these two payments, $1,500,000, shall constitute the "Gross Settlement Amount. (*Id.* § 1.24.)

The Settlement Fund is being administered by the Settlement Administrator, American Legal Claims Services, LLC. (*Id.* § 1.39.) If the settlement is granted final approval by the Court, the Net Settlement Amount shall be distributed to Settlement Class members in accordance with the proposed Plan of Allocation (or as modified by the Court and agreed by the Parties). Any Net Settlement Amount remaining after the settlement distributions are made and all Administrative Costs or applicable taxes have been paid, if any, shall be returned to the Plan to defray administrative fees and expenses of the Plan; there will be no *cy pres* payment or reversion to Defendant. (*Id.* § 5.3.)

2.      **Retention of an Independent Fiduciary.**

As required by Prohibited Transaction Class Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), as amended 75 FR 33830 (June 15, 2010), the Settlement provides that Fiduciary Counselors Inc., which has no relationship to any of the partes, will serve as an Independent Fiduciary to review the Settlement and provide, if the Independent Fiduciary concludes that it is appropriate, the authorization required by that Exemption on behalf of the Plan. (*Id.* § 2.) On or before January 29, 2025, the Independent Fiduciary will provide a report to Class Counsel memorializing its determination prior to the final approval hearing set by this Court, and Class Counsel will file the report before the final fairness hearing. (*Id.* § 2.1.6.) Accordingly, in addition to this Court's review and approval, the Settlement will be evaluated by an experienced independent fiduciary whose sole loyalty is to the Plans, and that fiduciary will evaluate the Settlement as to whether it is (1) reasonable in the light of the litigation risk and the value of the claims, (2) consistent with an arm's length agreement, and (3) not part of an agreement or arrangement to benefit a party in interest. The Independent Fiduciary's report will be filed with the Court upon receipt by Class Counsel.

3.      **Release of Claims.**

Under the terms of the Settlement, Plaintiffs and the Settlement Class release and forever discharge Defendant and the other Released Parties from all Released Claims, as set forth in more detail in Section 8 of the Settlement Agreement. (*Id. see also* §§ 1.34, 1.35, 3.14, 3.15, 3.16, 7.)

4.      **Notice.**

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement provides for notice to the Class and an opportunity for Settlement Class members to object to the final approval of the Settlement. The proposed form and method of notice of the proposed Settlement

satisfy all due process considerations and meets the requirements under Rule 23(e)(1). It was approved by the Court in the Preliminary Approval Order.

### 5. **Attorneys' Fees and Costs.**

Any Attorneys' fees and costs the Court may award will be paid from the Gross Settlement Fund. (*Id.* §§ 1.26, and 6.) The Settlement is not contingent on any such fees, costs, or compensation being awarded. (*Id.* § 13.4.) By this Motion, and as explained further below and consistent with the Settlement, Class Counsel is petitioning the Court for an award of attorneys' fees of one-third (33.3%) of the Gross Settlement Amount, plus reimbursement of reasonable expenses. (*Id.* §§ 1.26, and 6.)

### F. **The Settlement Class Members' Reactions to the Settlement.**

As set forth above, the Settlement Class Administrator sent the Court-approved Notice of Settlement to all 12,239 Settlement Class members on November 29, 2024.  (*See* Exhibit B, ALC Decl., ¶ 6.)   The objection deadline is January 29, 2025. (*Id.* at ¶ 8.) The Settlement Class Administrator estimates that 97.76% of the Settlement Class received the Notice of Settlement. (*Id.* at ¶ 6.) **No objections** have been made to the Settlement.  (*Id.* at ¶ 8.)

Class Counsel spoke with dozens (or more) of Settlement Class members who called with questions about the Settlement after receiving the Notice of Settlement. All of the Settlement Class members who contacted Class Counsel voiced strong support for final approval of the Settlement. (*See* Exhibit C to Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs, Hill Decl., ¶ 29). The absence of any objections and positive reaction from the Settlement Class members who contacted Class Counsel is further evidence in support of final approval of the Settlement.

G.     **CAFA Notice**.

Defendant prepared and sent notices to the Attorney General of the United States and to the Attorneys General of all states in which Settlement Class members reside, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"). None of the government actors served with the CAFA notice have objected to the settlement.

II.    **MEMORANDUM OF LAW**.

A.     **Legal Standard**.

It is well established that settlements are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Miller v. Rep. Nat'l. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977). A district court, in reviewing a proposed settlement of a class action case must find that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable." *See id*. at 428; *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); Rule 23(e)(2).

The Eleventh Circuit has previously outlined several factors that a court must consider in its determination of whether a proposed class-action settlement is fair, adequate, and reasonable: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett*, 737 F.2d at 986. In weighing these factors, the Court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," Courts are often "hesitant to substitute its own judgment for that of counsel." *See Canupp v. Liberty Behavioral*

9

*Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011) (*citing Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

For the reasons discussed below, the application of the recently amended Rule 23(e) factors, as well as the analogous *Bennett* factors, unquestionably demonstrates that the Settlement is fair, adequate, and reasonable. *See also Santiago v. Univ. of Miami,* 1:20-CV-21784 (ECF 65) (S.D. Fla. April 7, 2022 (granting final approval of similar ERISA 403(b) class action settlement), and *Angelo v. NCL Corporation LTD, et al.,* 1:22-cv-22962-AHS (ECF 56) (granting final approval of similar ERISA 401(k) class action settlement.)

**B.     The Class Has Already Been Certified on a Preliminary Basis.**

Beginning with the issue of class certification, the Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(1). Since the Court's Preliminary Approval Order, no objections have been made. Thus, there is no reason to re-visit the Court's Preliminary Approval Order.

**C.     All Relevant *Bennett* Factors Weigh in Favor of the Court Granting Final Approval of the Parties' Class Action Settlement.**

**1.     Likelihood of Success at Trial and Range of Possible Recovery (*Bennett* Factors 1–3).**

The first three *Bennett* factors which include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable—are unquestionably satisfied by the Settlement. Although "[a] determination of a reasonable settlement is not susceptible to a precise equation yielding a particular sum," *In re NetBank, Inc., Sec. Litig.*, No. 07-2298, 2011 WL 13176646, at *4 (N.D. Ga. Nov. 9, 2011).

The Settlement represents an outstanding result considering both the strength of Plaintiffs' claims and the strength of Defendant's defenses. *See also Bennett*, 737 F.2d at 987 (citation omitted) ("[A] just result is often no more than an arbitrary point between competing notions of reasonableness.") The Settlement requires Defendant to pay $1,500,000.00 for the benefit of the Settlement Class and to implement structural changes to the Plan that are anticipated to provide benefits to the Settlement Class for years to come.

Moreover, just the $1,500,000.00 monetary recovery falls well within the range of reasonableness as it is a substantial percentage of the estimated recovery Class Counsel estimate could be recovered if successful in litigating the case through trial. *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988); (*see also* Exhibit D to Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs, McKay Decl., ¶ 25.) Absent approval of the Settlement, continued litigation would be complex and would require the investment of considerable resources by both parties and the Court. Liability is contested and both sides would face considerable liability risks should the litigation proceed. In contrast to the complexity, delay, risk, and expense of continued litigation, the Settlement will produce certain, and substantial recovery for the Settlement Class.

Notably, a lawsuit involving similar issues resulted in a trial verdict for defendants on all claims. *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 317 (S.D.N.Y. 2018). Following appeals, the Second Circuit affirmed in part and reversed in part the trial judgment. The initial complaint in *Saceredote* was filed on August 9, 2016. *Sacerdote* has been bending for nearly ten years and the parties are gearing up for another trial. As *Sacerdote* clearly illustrates, Plaintiffs faced a substantial risk that they could litigate this case for years, at significant expense, only to lose at trial and on appeal, recovering nothing for the Settlement Class.

In sum, under the Settlement, the Settlement Class will quickly obtain $1,500,000 (roughly 42% of their total alleged losses without any delay; they will also benefit from the structural changes agreed to by Defendant, which are anticipated to lower costs and improve returns on retirement savings in the Plan for years to come. (*See* Exhibit D to Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs, McKay Decl., ¶ 25.) For these reasons, the first three *Bennett* factors thus support final approval by the Court of the Settlement.

### 2. Complexity, Expense, and Duration of the Litigation (*Bennett* Factor 4), and Stage of Proceedings at Which Settlement Was Achieved (*Bennett* Factor 6).

The fourth *Bennett* factor, which requires an analysis of the complexity, expense, and duration of the litigation, also favors the Court granting final approval of the Settlement. So does the sixth factor, the proceeding at which the settlement was achieved. Below the two are analyzed together because they are interrelated.

"The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Gevaerts v. TD Bank, N.A.*, No. 14-20744, 2015 WL 12533121, at *5 (S.D. Fla. Aug. 4, 2015).

The Settlement was the product of hard-fought litigation, which included substantial motion practice, pre-suit investigative discovery, an extensive and lengthy administrative exhaustion process that resulted in the production of more than 100,000 pages of documents, and the retention of knowledgeable and qualified experts who performed loss analyses.

Additionally, all counsel involved in the negotiations are experienced in handling class actions, complex ERISA litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. (*See, e.g.,* Exhibit D to Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs, McKay Decl., ¶¶ 3-4.) Where there "is no evidence of any kind that

the Settling Parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005). Because counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented their support for the Settlement is entitled to considerable weight. *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983).

Therefore, the fourth and sixth *Bennett* factors strongly supports approval of the Settlement.

### 3. Substance and Amount of Opposition to Settlement (*Bennett* Factor 5).

The remaining *Bennett* factor Courts typically consider is the substance and amount of opposition to the settlement—the fifth *Bennett* factor. Because there is no current opposition to the Settlement, this element is easily satisfied.

To be sure, "the reaction of the class is an important factor." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005); *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014). As described above, the Settlement Administrator provided Notice of the Settlement to over 12,000 Settlement Class members. No objections have been made to the Settlement. This last *Bennett* factor supports the Court granting final approval of the Settlement. *See, e.g., Lipuma.*, 406 F. at 1319; *see also Burrows v. Purchasing Power, LLC*, No. 12-22800, 2013 WL 10167232, at *7 (S.D. Fla. Oct. 7, 2013) (granting final approval of class action settlement, nothing that "[n]o members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition.").

### D. In addition to the *Bennett* Factors, All Rule 23(e) Factors Weigh in Favor of the Court Granting Final Approval of the Parties' Class Action Settlement.

Next, pursuant to 2018 amendments to Rule 23, when analyzing whether to grant final approval of a class action settlement, courts typically look to whether: (1) the class representatives

13

and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2). This standard is satisfied here.

### 1. **The Class Representatives and Class Counsel Have Adequately Represented the Class.**

The central component of representative adequacy is the absence of conflicts of interest between the named representative and the class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997). Here, Class Representatives, Dr. Terry Rzepkoski and Kristen Asselta, are current and former (respectively) participants in the Plan and allegedly suffered a pro rata loss because of Defendant's fiduciary breaches with regard to excessive administrative and recordkeeping fees, among other alleged problems. Like other Settlement Class members, the Class Representatives seek to maximize the recovery to the Settlement Class and improve the administration of the Plan going forward for all. They have no interests antagonistic to the claims of any Settlement Class member. *George v. Kraft Foods Global, Inc*., 251 F.R.D. 338, 348 (N.D. Ill. 2008).  Their interests are fully aligned with the interests of Settlement Class.

Furthermore, the Plaintiffs have been and remain willing and able to take the required role in the litigation to protect the interests of those they seek to represent. As one district court has noted, it is sufficient for an ERISA case if a proposed class representative "understands that she had a retirement plan and believes that defendants failed to protect the money in the Plan" and, further, that she "understands her obligation to assist her attorneys and testify." *Rankin v. Rots*, 220 F.R.D. 511, 521 (E.D. Mich. 2004). Plaintiffs understand and have demonstrated their commitment to this case at all times throughout this litigation, including during the administrative exhaustion process, litigation, and during the settlement process.

Finally, as discussed further below, Plaintiffs retained counsel with significant experience in ERISA class actions. (*See, e.g.,* Exhibit D to Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs, McKay Decl., ¶¶ 3-4.) When, as here, the Settlement Class is represented by counsel who have significant experience in class-action litigation and settlements, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *See, e.g., Hugo on behalf of Bank Atlantic Bancorp, Inc. v. Levan,* No. 08-61018-CIV, 2011 WL 13173025, at *10 (S.D. Fla. July 12, 2011) ("The view of the attorneys actively conducting the litigation regarding the appropriateness of a proposed settlement is "entitled to significant weight"); *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 635 (6th Cir. 2007) ("In deciding whether the settlement is fair, reasonable, and adequate, the Court must look to the opinions of class counsel and class representatives."). Simply put, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2. The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before a Neutral Mediator.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the parties and their counsel.

Finally, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions.[2] Where there "is no evidence of any kind

---

[2] *Pierre-Val v. Buccaneers Ltd. P'ship,* No. 8:14-cv-01182-CEH, 2015 WL 3776918, at *2 (M.D. Fla. June 17, 2015) ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks").

15

that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3. The Settlement Provides Adequate Relief to Class Members.

The relief to Settlement Class members satisfies the third Rule 23(e)(2) factor. The $1,500,000.00 secured by Plaintiffs for the Settlement Class members falls well within the range of reasonableness in this case. It is also about 42% of the reasonable total estimated recovery Class Counsel opine could be recovered if complete success at trial was obtained.

Continuing to litigate would be risky and expensive. The risk of Plaintiffs being unable to establish liability would be real because of the numerous defenses asserted by Defendant, including at both summary judgment and trial. Each of these remaining phases of the litigation pose serious risks, which the Settlement allows Plaintiffs and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

In sum, through this Settlement the Settlement Class can quickly realize a portion of their possible losses and secure structural changes going forward to the Plan that will inure to the benefit of all Settlement Class members. Thus, the third Rule 23(e)(2) factor remains satisfied.

### 4. The Proposal Treats Settlement Class Members Equitably.

Finally, the last Rule 23(e)(2) factor is satisfied because the Settlement treats Settlement Class members equitably relative to each other. The detailed "Plan of Allocation" summarized is set forth in Exhibit B to the Settlement Agreement (*see* ECF No. 99-1, pp. 50-51), which Plaintiffs incorporate by reference here provides for Settlement Class members will receive a pro rata share

of the $1,500,000. This is the most common approach in ERISA class action settlement and has been approved countless times by sister courts across the country. Thus, the final Rule 23(e)(2) factor is met.

**WHEREFORE**, Plaintiffs respectfully move this Court to grant this Motion.

### Certificate of Compliance with Local Rule 7.1

Pursuant to Local Rule 7.1 of the District Court for the Southern District of Florida, Plaintiffs' Counsel certifies that, consistent with the Parties' Settlement Agreement, Defendant does not oppose the Court granting final approval of the Settlement.

Dated this 21st day of January 2025.

Respectfully submitted,

/s/ *Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
**BRANDON J. HILL**
Florida Bar Number: 0037061
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com

**MICHAEL C. MCKAY**
*Pro Hac Vice*
**MCKAY LAW, LLC**
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85250
Telephone: (480) 681-7000
Email: mckay@mckay.law

***Attorneys for Plaintiffs and the Class***

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January, 2025, I caused a true and correct copy of the foregoing to be filed using the Clerk of Court's CM/ECF system, which then caused a notice of electronic filing on all Counsel of Record.

/s/ *Brandon J. Hill*
**BRANDO N J. HILL**