# Exhibit A



# Report of the Independent Fiduciary
# for the Settlement in
# *Rzepkoski, et al. v. Nova Southeastern University, Inc.*

January 29, 2025

**TABLE OF CONTENTS**

I.    Introduction ................................................................................................................. 1

II.   Executive Summary of Conclusions ........................................................................... 1

III.  Procedure ..................................................................................................................... 2

IV.   Background ................................................................................................................. 2

V.    Settlement .................................................................................................................... 4

VI.   PTE 2003-39 Determination ....................................................................................... 8



I.      **Introduction**

Fiduciary Counselors has been appointed as an independent fiduciary for the Nova Southeastern University 401(k) Plan; the Nova Southeastern University 403(b) Plan; the Nova Southeastern University 457(b) Deferred Compensation Plan; the Nova Southeastern University Grande Oaks LLC 401(k) Plan; the Nova Southeastern University Puerto Rico Plan, and each of its predecessor plans and/or successor plans, individually and collectively, and any trust created and attendant to all such plans (the "Plan") in connection with the settlement (the "Settlement") reached in *Rzepkoski, et al. v. Nova Southeastern University, Inc.*, Case No. 0:22-cv-61147-WPD (the "Litigation" or "Action"), which was brought in the United States District Court for the Southern District of Florida, Fort Lauderdale Division (the "Court"). Fiduciary Counselors has reviewed over 150 previous settlements involving ERISA plans.

II.     **Executive Summary of Conclusions**

After a review of key pleadings, decisions and orders, selected other materials and interviews with counsel for the parties, Fiduciary Counselors has determined that:

- The Court has certified the Litigation as a class action both during the Litigation and for settlement purposes, and in any event, there is a genuine controversy involving the Plan.

- The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone.

- The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances.

- The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.

- The transaction is not described in Prohibited Transaction Exemption ("PTE") 76-1.

- All terms of the Settlement are specifically described in the written settlement agreement and the plan of allocation.

- To the extent there is non-cash consideration, it is in the interest of the Plan's participants and beneficiaries, and the Plan is receiving no non-cash assets as part of the Settlement.

Based on these determinations about the Settlement, Fiduciary Counselors hereby approves and authorizes the Settlement on behalf of the Plan in accordance with PTE 2003-39.



### III. Procedure

Fiduciary Counselors reviewed key documents, including the First Amended Complaint, the Motion to for Summary Judgment and related papers, the Court's Order denying the Motion for Summary Judgment, the Stipulation for Certification, the Court's Order Approving the Stipulation for Class Certification, the Motion for Preliminary Approval and related papers, the Court's Order Preliminarily Approving Settlement, the Court's Order Resetting the Fairness Hearing, the Notice, the Plan of Allocation, the amended Plan of Allocation, the Motion for Attorneys' Fees and Costs and related papers, and the Motion for Final Approval of Class Action Settlement and related papers. In order to help assess the strengths and weaknesses of the claims and defenses in the Litigation, as well as the process leading to the Settlement, the members of the Fiduciary Counselors Litigation Committee conducted separate telephone interviews with counsel for the Defendant and counsel for Plaintiffs.

### IV. Background

#### A. Procedural History of Case

*Litigation*.

On June 16, 2022, Plaintiffs Dr. Terry Rzepkoski and Kristen Asselta ("Plaintiffs") filed their initial class action complaint against Defendant Nova Southeastern University, Inc. ("Defendant"). On September 1, 2022, upon the joint motion of the parties, the Court stayed the Litigation so the Plaintiffs could exhaust their administrative remedies before the Plan's administrative committee ("Committee"), as required under Eleventh Circuit precedent. On December 13, 2022, the Committee issued an initial determination denying Plaintiffs' claims and provided over 100,000 documents to support the denial. Plaintiffs submitted an appeal of that determination, which was denied on April 5, 2023.

On May 5, 2023, Plaintiffs filed their First Amended Complaint. Defendant filed its answer on June 20, 2023. The following day, on June 21, 2023, Defendant filed a motion for summary judgment, asserting that the decision should be based solely on facts in the administrative record and that, based on those facts, Defendants were entitled to summary judgment. Plaintiffs filed their opposition to the motion for summary judgment on September 15, 2023. Plaintiffs sought relief under Federal Rule of Civil Procedure 56(d), which permits the Court to defer consideration of a motion for summary judgment or to deny that motion without prejudice when a non-movant demonstrates it cannot present facts essential to opposing it. Plaintiffs argued that discovery in this Action had only just begun, and they listed numerous areas where they believed discovery was necessary. Defendant filed its reply on September 20, 2023, asserting that Plaintiffs had failed to avail themselves of discovery in the administrative process and were effectively seeking to undermine point of administrative exhaustion. After further briefing, the Court granted Plaintiffs' request for relief under Rule 56(d) and denied the motion for summary judgment without prejudice on September 25, 2023. Thereafter, Plaintiffs served written discovery requests. Defendant filed a motion for protective order seeking to effectively prevent Plaintiffs from taking any discovery in the case and to limit the evidentiary record



in the case only to the documents produced by Defendant in the administrative review process. Plaintiffs opposed the motion for a protective order. Defendant filed a reply in support of its motion. On December 22, 2023, Magistrate Judge Patrick M. Hunt heard oral argument from the parties on the motion. Magistrate Judge Patrick M. Hunt denied the motion on January 19, 2024, based on the same logic as the denial of the motion for summary judgment. Defendant appealed Magistrate Judge Patrick M. Hunt's order denying its motion for a protective order on February 2, 2024. After the appeal was fully briefed, it was denied on April 12, 2024. Defendant sought interlocutory review on April 30, 2024. Defendant also moved for a stay pending its interlocutory appeal. Defendant's motion for interlocutory review and for a stay was denied on July 12, 2024. The parties stipulated to class certification on June 20, 2024. The Court approved the stipulation on June 25, 2024.

### *Settlement and Preliminary Approval.*

Counsel for the parties first discussed settlement shortly after the administrative review process ended, April 5, 2023, but did not reach a settlement at the time. After the developments described above and extensive arm's-length negotiations, the parties, through counsel, reached an agreement in principle, which led to the Settlement.

Plaintiffs filed a motion seeking preliminary approval of the Settlement on October 18, 2024. The Court granted Plaintiffs' motion on October 24, 2024. The Court approved the class as follows:

> All persons who were participants or beneficiaries of the Plan at any time during the Class Period.
>
> The "Class Period" shall be defined as April 1, 2016 through September 30, 2024. A person was a participant in or beneficiary of the Plan during the Class Period if they had an account balance in the Plan during such period.

The Court also (1) preliminarily approved the settlement; (2) approved the form and method of class notice; (3) set February 28, 2025 as the date for a Fairness Hearing; and (4) approved January 31, 2025 as the deadline for objections. On December 3, 2024, the Court reset the Fairness Hearing for March 7, 2025.

### *Objections.*

January 31, 2025 is the deadline for Class Members to file objections to the Settlement. As of the date of this report, no Class Members filed an objection.



V.     **Settlement**

   A.   **Settlement Consideration**

   The Settlement provides for a Gross Settlement Amount of $1,500,000. After deducting (a) all attorneys' fees and costs paid to Class Counsel as authorized by the Court; (b) all administrative expenses; and (c) a contingency reserve not to exceed $35,000 that is set aside by the Settlement Administrator for: (1) administrative expenses incurred before the Settlement Effective Date but not yet paid; (2) administrative expenses estimated to be incurred after the Settlement Effective Date; and (3) an amount estimated for adjustments of data or calculation errors, the remainder (known as the "Net Settlement Amount") will be distributed to the Class Members in accordance with the Plan of Allocation.

   The Settlement also provides for prospective relief. Within eighteen (18) months from the entry of the Final Approval Order, Defendant will retain an ERISA Section 3(21) Consultant to review the investments offered by the Nova Southeastern University 401(k) Plan. This Consultant will provide a written report to the 401(k) Plan fiduciaries that contains analysis and recommendations concerning the Nova Southeastern University 401(k) Plan's investment holdings. The Plan fiduciaries are under no obligation to follow any of these recommendations. The fees for this Consultant will be paid from the Nova Southeastern University 401(k) Plan's forfeiture account and Class members release any claims as to payments from the forfeiture account for fees paid to this Consultant.

   Additionally, within twenty-four (24) months from the entry of the Final Approval Order, Plan fiduciaries will initiate a Request for Proposal for recordkeeping services for the Nova Southeastern University 401(k) Plan. The Request for Proposal will be elicited from – if they will bid – at least six of the ten largest recordkeepers, measured by assets, for defined contribution plans. As of the date of the Settlement Agreement, the recordkeepers included Fidelity Investments, Empower, Alight, TIAA, Vanguard Group, Voya Financial, Principal, Bank of America, Charles Schwab, and T. Rowe Price Group. The fees for the work encompassed by the Requests for Proposal will be paid from the Nova Southeastern University 401(k) Plan's forfeiture account and Class members release any claims as to payments from the forfeiture account for fees paid for Request for Proposal services.

   B.   **Settlement Class and Class Period**

   The Settlement defines Settlement Class as follows:

   > all persons who were participants in or beneficiaries of the Plan between April 1, 2016 and September 30, 2024.

   The Settlement defines Class Period as the period from April 1, 2016, through September 30, 2024.

   As noted above, the Court has certified the Settlement Class.



**C.     The Release**

The Settlement defines "Released Claims" as follows:

any and all past, present, and future actual or potential claims (including but not limited to claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement, litigation costs, injunction, declaration, contribution, indemnification, claims as to the uses of funds in the Plan's forfeiture account for any purpose during the Class Period and/or for any purposes in conjunction with undertakings described in this Settlement Agreement, or any other type or nature of legal or equitable relief), actions, demands, rights, obligations, liabilities, expenses, costs, and causes of action, accrued or not, whether arising under federal, state, or local law, whether by statute, contract, or equity, whether brought in an individual or representative capacity, whether accrued or not, whether known or unknown, suspected or unsuspected, foreseen or unforeseen based in whole or in part on acts or failures to act during the Class Period:

1. That were asserted or could have been asserted in the Class Action, or that arise out of, relate to, or are based on any of the allegations, acts, omissions, facts, matters, transactions, or occurrences that were alleged, asserted, or set forth in the operative Complaint or in any complaint previously filed in the Class Action; or

2. That arise out of, relate in any way to, are based on, or have any connection with: (a) the selection, oversight, retention, monitoring, compensation, fees, or performance of the Plan's investment options, payment to or cost of recordkeeping fees, or expenses of all Plan service providers; (b) disclosures or failures to disclose information regarding the Plan's investment options; (c) the management, oversight or administration of the Plan or its fiduciaries; or (d) alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions under ERISA with respect to the foregoing; or

3. That would be barred by *res judicata* based on entry of the Final Approval Order; or

4. That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Plan or any Class Member in accordance with the Plan of Allocation; or

5. That relate to the approval by the Independent Fiduciary of the Settlement, unless brought against the Independent Fiduciary alone.

The Class Representatives, Class Members and the Plan expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides that a "general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor," and any similar state, federal or other law, rule or regulation or principle of common law of any domestic governmental entity.



"Released Claims" do not include any individual or Single-Plaintiff claims for benefits that the Class Representatives or the Settlement Class have as to the value of their respective vested account balances under the terms of the Plan and according to the Plan's records as of the date the Settlement becomes Final[1] where such claims arise solely under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) and to the extent such claims do not relate to the Released Claims.

The terms of the release, including the provision for the Independent Fiduciary to provide a release of claims by the Plan, are reasonable.

D. **The Plan of Allocation**

The plan of allocation is covered in the Settlement and the Plan of Allocation attached as an exhibit to the Settlement. Some provisions in each document cover matters not covered in the other. Some provisions overlap. Class Counsel have indicated that they will file an amended Plan of Allocation to clarify certain matters, as noted below.

The Net Settlement Amount will be allocated as follows:

1. The Settlement Administrator will calculate an average account balance for each Settlement Class Member based on his or her total annual ending account balance invested in the Plans for the Class Period ("Average Account Balance"). The Settlement Administrator will use account balances as of December 31, 2016 for 2016 and account balances as of December 31, 2024 for 2024.[2]

2. The Settlement Administrator will sum the Average Account Balances for all Settlement Class Members.

3. The Settlement Administrator will then determine the total settlement payment available to each Settlement Class Member by calculating each such person's pro rata share of the Net Settlement Amount based on his or her Average Account Balance compared to the sum of the Average Account Balances for all Settlement Class.

For Class Members who have Plan accounts as of the date of the distribution of the Net Settlement Amount, the distribution will be made pursuant to applicable Plan terms. For Former Participants (defined as a member of the Settlement Class who does not have an Active Account[3] as of the date of the Final Approval Order), their distributions will be

---

[1] Counsel for Defendants has confirmed that this language is not intended to preclude a participant from arguing, solely in an individual claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), that the vested account balance according to the Plan's records as of the date the Settlement becomes Final is incorrect as a result of a recordkeeping error. We have relied on this understanding in determining that the scope of the release is reasonable.

[2] Class Counsel have indicated that they anticipate providing the Court an amended Plan of Allocation to make this calculation information clear.

[3] Active Account means an individual investment account in the Plan with a balance greater than $50.00 as of the date of entry of the Final Approval Order.



made by checks written to each Former Participant from the Settlement Administrator. If the dollar amount of the settlement payment to a Settlement Class Member who is a Former Participant is calculated by the Settlement Administrator to be less than $50.00, then that Former Participants payment or pro rata share shall be zero for all purposes.[4]

All checks issued in accordance with the Plan of Allocation shall expire no later than one hundred twenty (120) calendar days after their issue date. All checks that are undelivered or are not cashed before their expiration date shall revert to the Qualified Settlement Fund. No sooner than one hundred fifty (150) calendar days following the Settlement Effective Date, any Net Settlement Amount remaining in the Qualified Settlement Fund after distributions, including costs, taxes and interest-earned on the Qualified Settlement Fund, shall be paid to the Plan's forfeiture account for the purpose of defraying administrative fees and expenses of the Plan.

We find the plan of allocation to be reasonable, including:

1. the pro rata distribution of funds based on Class Members' Average Balance as defined above;

2. the provision that "If the dollar amount of the settlement payment to a Settlement Class Member who is a Former Participant is calculated by the Settlement Administrator to be less than $50.00, then that Former Participants payment or pro rata share shall be zero for all purposes"; and

3. the provisions for payments into Plan accounts for Class Members with Plan Accounts as of the date of distribution and by check for Former Participants.

The provisions are cost-effective and fair to Class Members in terms of both calculation and distribution.

E.  **Attorneys' Fees and Litigation Expenses**

Class Counsel seek an award of attorneys' fees in the amount of $500,000, which represents one-third of the Settlement Amount of $1,500,000. Class Counsel's lodestar was $476,897.50 as of January 21, 2025, when Class Counsel filed the Motion for Award of Attorneys' Fees and Costs and related papers. Not taking into account any additional work required in implementing the Settlement, the lodestar multiplier would be 1.05 if the requested $500,000 were awarded. In our experience, the percentage requested and the lodestar multiplier are within the range of attorney fee awards for similar ERISA cases, with the most common award in similar cases equaling one-third of the settlement amount. In light of the work performed, the result achieved, the litigation risk assumed by

---

[4] This provision is in the Settlement. The Plan of Allocation mistakenly failed to limit it to Former Participants. Class Counsel have indicated that they will file an amended Plan of Allocation to make clear that the provision will apply only to Former Participants.



Class Counsel, and the combination of the percentage and the lodestar multiplier, Fiduciary Counselors finds the requested attorneys' fees to be reasonable.

Class Counsel also request reimbursement of $8,051.35 for litigation costs incurred to date, including expert fees ($5,800) and travel expenses ($1,100). Fiduciary Counselors finds the request for expenses to be reasonable.

In sum, although the Court ultimately will decide what fees and expenses to approve, we find that the requested amounts are reasonable under ERISA.

## VI. PTE 2003-39 Determination

As required by PTE 2003-39, Fiduciary Counselors has determined that:

- **The Court has certified the Litigation as a class action both during the Litigation and for settlement purposes.** Thus, the requirement of a determination by counsel regarding the existence of a genuine controversy does not apply. Nevertheless, we have determined that there is a genuine controversy involving the Plan. Based on the documents we reviewed and our calls with counsel, we find that there is a genuine controversy involving the Plan within the meaning of the Department of Labor Class Exemption, which the Settlement will resolve.

- **The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone.** The Action claims that the Defendant was a fiduciary to the Plan and violated fiduciary duties of prudence under ERISA that it owed to the Plan's participants and beneficiaries. Plaintiff alleged Defendant breached certain fiduciary duties by causing the Plan to incur higher administrative fees and expenses than reasonable and necessary. Plaintiffs also alleged Defendant breached certain fiduciary duties by selecting and continuing to offer certain investment options to the Plan participants under the Plan's investment lineups. In the Complaint, Plaintiffs asserted causes of action for losses they contend were suffered by the Plan as the result of these alleged breaches of fiduciary duty by Defendant.

  Defendant denied each allegation of wrongdoing made in the operative Complaint and contended that it had no liability in the Action. With respect to the primary question of liability, Defendant claimed that it properly managed the Plan and had prudent processes in place to evaluate the Plan's investments and recordkeeping and administrative fees. Defendant claimed that its choices were within the range of choices made by other similarly-situated plan fiduciaries at the time they were made. Defendant also contended that Plaintiffs overstated the potential losses they could recover at trial even assuming Plaintiffs could establish liability. Defendant also retained the ability to renew on appeal its argument that the Action should have been resolved based on the administrative record.



Absent the Settlement, continued litigation would be complex and would require the investment of considerable resources by both parties and the Court, including for additional discovery and for expert witnesses. Plaintiffs' claims present a number of substantial risks to establishing both liability and losses. There is no certainty that Plaintiffs would have prevailed at trial, and again at the appellate level. In contrast to the complexity, delay, risk, and expense of continued litigation, the Settlement will produce certain, and substantial recovery for Settlement Class.

The potential for expense and delay is illustrated by *Sacerdote v. New York Univ.*, where the parties held a trial over similar claims that lasted eight days; included testimony from twenty fact witnesses, five expert witnesses, and over 600 exhibits. Judge Katherine Forrest of the U.S. District Court of the Southern District of New York ruled, in a 78-page decision, that the Defendant did not breach its ERISA fiduciary duties. Plaintiff appealed. The Second Circuit reversed, in part, and the parties continue to litigate with the prospect of another trial on the horizon, and presumably more appeals thereafter. They have been litigating for nearly ten years with no end in sight.

Class Counsel estimated a potential total monetary recovery of roughly $3,600,000 was possible. The $1,500,000 monetary recovery represents about 42% of the potential monetary recovery. This amount represents a significant recovery for the Plan. *See Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988).

The $1,500,000 Settlement Amount is a fair and reasonable recovery given the posture of the case, the results in numerous similar cases in the last several years, the defenses Defendant would have asserted regarding the remaining claim, the risks involved in proceeding to trial and the possibility of reversal on appeal of any favorable judgment.

Fiduciary Counselors also finds the other terms of the Settlement to be reasonable, including the scope of the release, attorneys' fees and expenses and the amended Plan of Allocation.

- **The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances.** As indicated in the finding above, Fiduciary Counselors determined that Class Counsel obtained a favorable agreement from Defendant in light of the challenges in proving the underlying claims and damages.

- **The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.** Fiduciary Counselors found no indication the Settlement is part of any broader agreement between Defendant and the Plan.

- **The transaction is not described in PTE 76-1.** The Settlement did not relate to delinquent employer contributions to multiple employer plans and multiple employer collectively bargained plans, the subject of PTE **7**6-1.



- **All terms of the Settlement are specifically described in the written settlement agreement and the plan of allocation.**

- **To the extent there is non-cash consideration, it is in the interest of the Plan's participants and beneficiaries, and the Plan is receiving no non-cash assets as part of the Settlement.** In addition to paying the $1,500,000 Settlement Amount, the Defendant has agreed to additional prospective relief as described in Section V.A. above and as specifically described in the Settlement. Including prospective relief that addresses the concerns underlying the Litigation is reasonable and in the interest of Plan's participants and beneficiaries. The non-cash consideration does not include non-cash assets, so the requirements related to non-cash assets do not apply.

- **Acknowledgement of fiduciary status.** Fiduciary Counselors has acknowledged in its engagement letter that it is a fiduciary with respect to the settlement of the Litigation on behalf of the Plan.

- **Recordkeeping**. Fiduciary Counselors will keep records related to this decision and make them available for inspection by the Plan's participants and beneficiaries as required by PTE 2003-39.

- **Fiduciary Counselors' independence**. Fiduciary Counselors has no relationship to, or interest in, any of the parties involved in the litigation, other than the Plan, that might affect the exercise of our best judgment as a fiduciary.

Based on these determinations about the Settlement, Fiduciary Counselors (i) authorizes the Settlement in accordance with PTE 2003-39; and (ii) gives a release in its capacity as a fiduciary of the Plan, for and on behalf of the Plan. Fiduciary Counselors also has determined not to object to any aspect of the Settlement.

Sincerely,

*Stephen Caflisch*
Stephen Caflisch
Senior Vice President & General Counsel

