UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| DR. TERRY RZEPKOSKI and KRISTEN ASSELTA, on behalf of Nova University Defined Contribution Plan, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NOVA SOUTHEASTERN UNIVERSITY,<br><br>Defendant. | Case No. 0:22-cv-61147-WPD |

**REPORT AND RECOMMENDATION ON PLAINTIFFS' UNOPPOSED
MOTION FOR ATTORNEYS' FEES AND COSTS**

THIS MATTER is before the Court on Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs ("Motion"). (ECF No. 102). On January 21, 2025, the Court held a final fairness hearing. On March 11, 2025, the Court granted final approval of the Parties' class action settlement. (ECF No. 108). The Court referred Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs to the undersigned for appropriate disposition or report and recommendation. (ECF No. 104). For the reasons stated herein, the Court recommends the Motion be granted.

**I.   BACKGROUND.**

Plaintiffs seek an attorney fee award of one-third of the settlement amount, as well as reimbursement of litigation costs and administration expenses.  The undersigned recommends the Court grant Plaintiffs' request.

By way of background, on October 24, 2024, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendant. (ECF No. 100).  The

Settlement Class Administrator sent the Court-approved Notice of Settlement to all 12,239 Settlement Class Members on November 29, 2024.  (*See* Exhibit B to Motion, Declaration from Settlement Administrator, American Legal Claims, ¶ 6) ("ALC Decl.")  The objection deadline expired on January 29, 2025. (*Id.* at ¶ 8.) Importantly, the settlement administrator estimated that 97.76% of the class members received notice. (*Id.* at ¶ 6.)  Not a single objection was made. The Court has already granted final approval of all aspects of the Parties' settlement other than attorneys' fees and costs. (ECF No. 108).

As noted in Plaintiffs' Motion, Class Counsel undertook this class action without guarantee of payment and, despite significant hurdles, achieved an excellent result on behalf of Plaintiffs and the Class by securing a gross common fund from Defendant totaling $1,500,000.00. The proposed Settlement provides an immediate benefit to the Settlement Class in the form of a large cash payment. The Settlement is the product of hard-fought litigation over nearly 2.5 years, which included substantial motion practice, including a defense motion for summary judgment, a Rule 56(d) motion to deny defendant's summary judgment as premature, a motion for protective order filed by Defendant that was denied and appealed to the Court, a motion by defendant seeking permission to file an interlocutory appeal as to the denial of its protective order, and a robust pre-suit administrative remedies process that involved the exchange of more than ***100,000*** pages of substantive documents. The case also involved the retention of knowledgeable and qualified experts who performed damage analyses, and extensive arm's-length negotiations between some of the most sophisticated ERISA lawyers in the country representing each party.

Not only that, but the benefits of the Settlement must also be considered in the context of the risk that further protracted litigation might lead to no recovery, or to a smaller recovery for Plaintiffs and the proposed Settlement Class. The Defendant mounted a vigorous defense at all

stages of the litigation and, but for the Settlement, would have continued to do so through all future stages of the litigation, including through possible appellate proceedings.

Moreover, the proposed Settlement Agreement (*see* ECF No. 97-1, pp. 7-36) required the Defendant to retain an independent fiduciary to act on behalf of the Plan in reviewing the Settlement for purposes of determining whether to authorize Plaintiffs' Released Claims on behalf of the Plans and the Settlement Class. *See* Prohibited Transaction Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003). Defendant retained Fiduciary Counselors to scrutinize the Settlement and opine on whether the Settlement is fair and reasonable to the Plan, including as the reasonableness of the attorneys' fees and costs sought in the Motion. A copy of Fiduciary Counselor's Report was filed on February 20, 2025. (ECF No. 105-1). Fiduciary Counselors concluded, "[a]fter a review of key pleadings, decisions and orders, selected other materials and interviews with counsel for the parties, Fiduciary Counselors has determined that," among other things: "[t]he Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone…." (ECF No. 105-1, p. 4).

Class Counsel's attorneys' fee request comports with the Eleventh Circuit's decision in *Camden*, holding that "[h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class"). *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). In sum, and in light of the result achieved, coupled with the risks undertaken by Class Counsel, lack of any objections whatsoever, and the public policy need to provide adequate incentive for attorneys to enforce the critical protection ERISA offers retirement plan participants, Class Counsel's request for

attorneys' fees and costs in the amount of one-third of the Settlement Fund, plus litigation costs, is reasonable and should be awarded.

## II.     LITIGATION AND SETTLEMENT HISTORY.

### A.     Pre-Suit Investigation.

Before filing this case, Class Counsel conducted significant in-depth research and analysis into Plaintiffs' claims and the anticipated defenses of those claims. (*See generally* Exhibit C to Motion, Hill Decl., ¶¶ 10-13.) Class Counsel retained and worked with industry experts during the pre-suit investigation stage. (*Id.*) Class Counsel also reviewed thousands of pages of publicly available documents, reviewed Plaintiffs' Plan documents, and worked with Plaintiffs and expert witnesses to craft the Complaint and Amended Complaint that were filed. (*Id.*)

### B.     Exhaustion of Administrative Remedies.

On July 8, 2022, Class Counsel (on behalf of Plaintiffs) sent a letter addressed to the "Plan Administrator" which requested certain Plan documents and submitted an administrative claim pursuant to the Plan's mandatory administrative claims review process. (Exhibit C to Motion, Hill Decl., ¶ 13.) During the course of the administrative remedies process, Defendant produced over one-hundred thousand pages of documents relevant to Plaintiffs' claims, including (1) the Plan's committee charter; (2) investment policy statement, (3) plan document and summary plan description, (4) committee meeting minutes, (5) investment advisor reports, (6) recordkeeper reports, (7) Plaintiffs' account statements, and other documents. Class Counsel carefully scrutinized all of the documents produced. The administrative review process finally came to an end on April 5, 2023.

### C.     Amended Complaint, Motion Practice, and Discovery

On May 5, 2023, Plaintiffs filed their First Amended Complaint. (ECF 24.) Defendant filed

4

its answer on June 20, 2023. (ECF 27.) The following day, on June 21, 2023, Defendant filed a motion for summary judgment. (ECF 28.) Plaintiffs filed their opposition, which included a Rule 56(d) request, to the motion for summary judgment on September 15, 2023 (ECF 53.) Defendant filed its reply on September 20, 2024 (ECF 54.) The Court denied the motion for summary judgment on September 25, 2023. (ECF 55.)

Thereafter, Plaintiffs served written discovery requests. Defendant filed a motion for protective order seeking to effectively prevent Plaintiffs from taking any discovery in the case and to limit the evidentiary record in the case only to the documents produced by Defendant in the administrative review process. (ECF 61.) Plaintiffs opposed the motion for a protective order. (ECF 64.) Defendant filed a reply in support of its motion. (ECF 65.) On December 22, 2023, the undersigned heard oral argument from the parties on the motion and later denied the motion on January 19, 2024. (ECF 67, 68.)

Defendant appealed that order denying its motion for a protective order on February 2, 2024 (ECF 72.) After the appeal was fully briefed, it was denied on April 12, 2024 (ECF 79.) Defendant sought interlocutory review on April 30, 2024. (ECF 80.) Defendant also moved for a stay pending its interlocutory appeal. (ECF 81.) Defendant's motion for interlocutory review and for a stay was denied on July 12, 2024. (ECF 92.)

The parties stipulated to class certification on June 20, 2024. (ECF 90.) The Court approved the stipulation on June 25, 2024. (ECF 91.) The following class was certified: "All persons who were participants in or beneficiaries of the Plan, at any time between June 15, 2016, and the present (the "Class Period.)" (*Id.*)

   D.   **Settlement Negotiations.**

Class Counsel and Defendant's counsel have extensive experience handling ERISA

fiduciary-breach lawsuits similar to this one. Settlement was first discussed among counsel for the parties shortly after the administrative review process ended, over a year ago. (Exhibit C to Motion, Hill Decl., ¶ 25.) After extensive arms-length negotiations—the parties, through counsel, reached an agreement in principle, which led to the Settlement the Court has already approved on both a preliminary and final basis.

### E. The Settlement Agreement.

#### 1. Benefits to Class Members.

The Settlement provides for a monetary payment of $1,500,000.00 as compensation to the Settlement Class. (*See* ECF No. 97-1, Settlement Agreement § 1.24.) This "Gross Settlement Amount" will cover the independent fiduciary fees; settlement administration fees and costs; and any Class Counsel fees and costs approved by the Court. (*Id*. § 1.24, 2.1.3., 6.1.) The remaining "Net Settlement Amount" will be distributed to Settlement Class Members pursuant to the proposed Plan of Allocation. (*See id.,* Plan of Allocation.)

Under the terms of the Settlement, within thirty (30) days of the entry of the Preliminary Approval Order, the Defendant was required to pay $100,000 into the Qualified Settlement Fund to allow for payment of initial Administrative Expenses and Independent Fiduciary Expenses that may arise before the Court's entry of the Final Approval Order and Judgment. (*See* Settlement Agreement § 4.4.) Within thirty (30) calendar days of the Effective Date of the Settlement Agreement, Defendant shall pay the remainder of the Gross Settlement Amount, $1,400,000, into the Qualified Settlement Fund. (*Id.* § 4.5.) The sum of these two payments, $1,500,000, shall constitute the "Gross Settlement Amount." (*Id.* § 1.24.)

The Settlement Fund is being administered by the Settlement Administrator, American Legal Claims Services, LLC. (*Id.* § 1.39.) Any Net Settlement Amount remaining after the

settlement distributions are made and all Administrative Costs or applicable taxes have been paid, if any, shall be returned to the Plan to defray administrative fees and expenses of the Plan; there will be no *cy pres* payment or reversion to Defendant. (*Id.* § 5.3.)

### 2. **Retention of an Independent Fiduciary.**

As required by Prohibited Transaction Class Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), as amended 75 FR 33830 (June 15, 2010), the Settlement provides that Fiduciary Counselors Inc., which has no relationship to any of the partes, will serve as an Independent Fiduciary to review the Settlement and provide, if the Independent Fiduciary concludes that it is appropriate, the authorization required by that Exemption on behalf of the Plan. (*Id.* § 2.)

As explained above, Defendant retained Fiduciary Counselors to scrutinize the Settlement and opine on whether the Settlement is fair and reasonable to the Plan, including as the reasonableness of the attorneys' fees and costs sought in the Motion. A copy of Fiduciary Counselor's Report was filed on February 20, 2025. (ECF No. 105-1). Fiduciary Counselors concluded, "[a]fter a review of key pleadings, decisions and orders, selected other materials and interviews with counsel for the parties, Fiduciary Counselors has determined that," among other things: "[t]he Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone…." (ECF No. 105-1, p. 4).

### 3. **Release of Claims.**

Under the terms of the Settlement, Plaintiffs and the Settlement Class Members, on their own behalf and on behalf of their current and former beneficiaries, their representatives, and their successors-in-interest, and the Plan absolutely and unconditionally release and forever discharge

7

Defendant and the other Released Parties from all Released Claims, as set forth in more detail in Section 8 of the Settlement Agreement. (*Id.* §§ 1.34, 1.35, 3.14, 3.15, 3.16, 7.)

### 4. Notice and Objections.

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement provides for notice to the Class and an opportunity for Settlement Class Members to object to approval of the Settlement. The proposed form and method of notice of the proposed Settlement satisfy all due process considerations and meet the requirements under Rule 23(e)(1) and was approved by the Court in its Preliminary Approval Order and Final Order. Importantly, not a single objection was made. Thus, the Class Members' reaction to the settlement has been overwhelmingly positive. This factor cuts heavily in favor of granting the fees and costs sought by Class Counsel.

### 5. Attorneys' Fees and Costs.

Any attorneys' fees and costs the Court may award will be paid from the Gross Settlement Fund. (*Id.* §§ 1.26, and 6.) The Settlement is not contingent on any such fees, costs, or compensation being awarded. (*Id.* § 13.4.) Class Counsel is petitioning the Court for an award of attorneys' fees of one-third (33.3%) of the Gross Settlement Amount, plus reasonable expenses. (*Id.* §§ 1.26, and 6.) The fees requested by Class Counsel should be awarded for the reasons set forth below.

## III. FEE REQUEST ANALYSIS.

In Plaintiffs' Motion, Plaintiffs' counsel requests attorneys' fees in the amount of $500,000, which is equal to 33.3% percent of the Settlement Fund. Defendant agreed not to oppose a fee award of up to 33.3% of the common fund. Plaintiffs' counsel also seeks to recover litigation costs totaling $8,051.35.

To determine attorneys' fees "in a case involving a class action settlement that created a

8

reversionary common fund, [the Eleventh Circuit] held that 'attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015) (quoting *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 770, 774-75 (11th Cir. 1991)). The "majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I*, 946 F.2d at 774. This "benchmark" "may be adjusted in accordance with the individual circumstances of each case." *Id*. at 775. Those circumstances include the twelve factors set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), namely: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Id*. at 772 n.3 (citing *Johnson*, 488 F.2d at 717–79).

"Other pertinent factors [include] the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, . . . and the economics involved in prosecuting a class action." *Id*. at 775. "In most instances, there will also be additional factors unique to a particular case, which will be relevant to the district court's determination. Having reviewed the efforts expended by Class Counsel, the undersigned finds that an award of 33.3% of the Settlement Fund for attorneys' fees is reasonable under the circumstances of this case, as explained below.

### A. Time and Labor Required.

"Although the hours claimed or spent on a case should not be the sole basis for determining a fee, . . . they are a necessary ingredient to be considered." *Johnson*, 488 F.2d at 717. Here, Class Counsel attests to having spent a significant amount of time and labor required to bring this matter to settlement and filed multiple detailed declarations attesting to work performed by Class Counsel and staff during the 2.5 years this case was litigated. (ECF No. 102-3, Hill Decl., 102-4, McKay Decl.) Although a lodestar cross-check is not required, when applied it supports the fees sought. The Court finds that the time and labor devoted to this case weighs in favor of the requested fee award.

### B. Novel and Difficult Issues.

This Court must next consider whether the questions in the case were novel or difficult. This action involved complex issues arising under ERISA, a highly technical statute. Courts in this Circuit recognize that class actions involving various legal theories are, by their nature, difficult. *See Yates v. Mobile Cty. Personnel Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (noting that extremely complicated litigation requires thorough and detailed research of almost every question involved); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547 (S.D. Fla. 1988). One Court in this Circuit referred to ERISA breach of fiduciary duty claims as "complex." *Henderson v. Emory Univ.*, No. 16-2920-CAP, 2018 WL 6332343, at *7 (N.D. Ga. Sept. 13, 2018). To be sure, unlike other common employment law-related claims, such as suits brought under the Fair Labor Standards Act, there are relatively few ERISA retirement plan class action cases in this Circuit. While such settlements have certainly occurred in other states, there are very few 401(k) and 403(b) class action settlements in Florida.

Therefore, the undersigned finds that this case is novel and presented difficult questions of

both fact and law. Accordingly, only a small subset of the plaintiffs' bar is presently seasoned to handle this type of case, evidenced by the relatively few number of ERISA class action cases filed (or pending) in this Circuit involving ERISA retirement plans. Class Counsel had the expertise to bring this case and the expertise to marshal it to a favorable outcome. Few lawyers have the skill and wherewithal to see this case through against a sophisticated and well-funded Defendant and top-notch defense counsel, as Class Counsel did here. This factor also weighs heavily in favor of the reasonableness of the requested fee.

## C. The Skill of Class Counsel.

The next relevant factor is "[t]he skill requisite to perform the legal service properly." *Johnson*, 488 F.2d at 718. This requires the Court to "closely observe the attorney's work product, his preparation, and general ability before the court." *Id*. "The trial judge's expertise gained from past experience as a lawyer and [her] observation from the bench of lawyers at work become highly important in this consideration." *Id*.; *see also Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (explaining that "reputation and experience are usually only proxies for skill, which in a rational economic environment is the ultimate determinant of compensation level"). The undersigned finds Class Counsel to be sufficiently skilled to justify the requested fee award.

Class Counsel have decades of litigating class action cases and have been named as class counsel in multiple class actions throughout the country, many of which were ERISA cases. Additionally, Class Counsel has demonstrated skill in the prosecution and settlement of this case. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1208 (S.D. Fla. 2006) (explaining that "skill may be measured by evaluating the degree of prudence and practicality exhibited by counsel at the beginning of the case" and may "through arduous preparation and efficient

11

organization") (citing *Norman*, 836 F.2d at 1300); *see also Norman*, 836 F.2d at 1300 ("From the beginning and throughout a case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model.") Further, federal courts have relatedly observed that "the quality of representation is best measured by results, and . . . such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) (internal quotations and citation omitted). The result achieved in this case supports the conclusion that Class Counsel is skilled and well qualified.

### D. **Preclusion from Other Employment**.

The next *Johnson* factor also favors granting Class Counsel's request for attorneys' fees. The hours required to prosecute this action limited the amount of time and resources that Class Counsel was available to devote to other matters over the period of this litigation. Thus, this factor also militates in favor of finding the requested fee reasonable.

### E. **Customary Fee**.

The Court must also assess whether the requested fee is customary for a case such as this, namely, a complex class action pursued on a contingency fee basis. The requested fee is consistent with fee awards that have been granted in other ERISA class actions within the Eleventh Circuit. *See Santiago v. Univ. of Miami*, 1:20-CV-21784 (S.D. Fla. April 7, 2022), ECF 66 (granting class counsel's request for attorney fee consisting of one-third of common fund, plus litigation costs, in ERISA retirement plan case nearly identical to this case); *Angelo v. NCL Corporation LTD, et al.*, 1:22-cv-22962-AHS (ECF No. 55) (granting class counsel's request for attorney fee consisting of one-third of common fund, plus litigation costs, in ERISA retirement plan case); *see also*

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 15-22782-CIV, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) ("Courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund."); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766, (M.D. Fla. Apr. 23, 2020) ("Indeed, district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund.")

Accordingly, Class Counsel's request for a fee award of 33.3% of the Settlement Fund is consistent with what courts have awarded in other ERISA class actions.

### F. Type of Fee Arrangement.

The sixth *Johnson* factor concerns the type of fee arrangement (hourly or contingent) entered into by the attorney. 488 F.2d at 718. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees." *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988). As recognized in *Behrens*, without a contingent fee, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort and money, especially in light of the risks of recovering nothing." *Id*. at 548.

Class Counsel assumed substantial risk in pursuing this case by agreeing to prosecute claims which, as noted above, presented significant legal issues and which were subject to several affirmative defenses that could have reduced the value of the case to zero. Class Counsel's risk was also amplified by the fact that it agreed to prosecute those claims on a pure contingency basis, meaning it would not receive any compensation for its work or reimbursement for out-of-pocket expenses if the class did not recover any money. Accordingly, the Court concludes that this factor weighs in favor of the requested fee award.

### G. Time Limitations.

"Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Johnson*, 488 F.2d at 718. This case undoubtedly involved significant hours of work and demanded much of Class Counsel's time, which also cuts in favor of the requested fee award.

### H. Amount Involved and the Results Obtained.

The next factor which must be considered is the amount involved, and the results obtained. In *Camden*, the Eleventh Circuit explained that "a common fund is itself the measure of success"; thus, "[the] monetary results achieved [in a particular case] predominate over all other criteria." 926 F.2d at 774 (citation omitted). Stated another way, the amount involved, and results obtained is the "most important factor" in determining an award of attorneys' fees. *Allapattah Servs.*, 454 F. Supp. 2d at 1204-05.

Class Counsel secured from Defendant a gross common fund totaling $1,500,000.00 on behalf of the Settlement Class. In doing so, Class Counsel effectively obtained an excellent result that provides meaningful monetary relief for all Class Members as well as structural changes to the administration of the Plan, despite significant litigation risks which could have resulted in the Class achieving a significantly worse recovery, or even no recovery at all.

### I. Experience, Reputation, and Ability of the Attorneys.

This case has, at all stages, been handled on both sides by very experienced lawyers whose reputations for effective handling of complex litigation are known throughout Florida, and even throughout the country. Class Counsel set forth their qualifications and prior experience in the Declarations attached to Plaintiffs' Motion. This factor also weighs in favor of awarding the fees

sought.

### J. Undesirability of the Case.

The expense and time involved in prosecuting such litigation on a contingent basis, with no guarantee or high likelihood of recovery would make this case highly undesirable for many attorneys. The requested fee of one-third of the monetary recovery is reasonable and appropriate given the significant risk of nonpayment in these types of cases due to the novel nature of this case and adverse precedents. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066-JEC, 2008 WL 11234103, at *3 (N.D. Ga. Mar. 4, 2008).

### K. Nature and Length of the Professional Relationship with the Client.

Class Counsel did not represent a long-term client in this matter. This factor is neutral. Neutral factors weigh in favor of granting fees sought.

### L. Awards in Similar Cases.

"The reasonableness of a fee may also be considered in light of awards made in similar litigation within and without the court's circuit." Johnson, 488 F.2d at 719. In similar ERISA excessive fee cases, district courts in this Circuit (and others) have consistently recognized that a one-third fee is the market rate. E.*g.*, *Santiago v. Univ. of Miami*, 1:20-CV-21784 (S.D. Fla. April 7, 2022), ECF No. 66 (granting class counsel's request for attorney fee consisting of one-third of common fund, plus litigation costs, in ERISA retirement plan case nearly identical to this case); *Angelo v. NCL Corporation LTD, et al.*, 1:22-cv-22962-AHS (ECF No. 55) (granting class counsel's request for attorney fee consisting of one-third of common fund, plus litigation costs, in ERISA retirement plan case); *Clark v. Duke Univ.*, No. 16-1044, 2019 WL 2579201, at *3 (M.D.N.C. June 24, 2019); *Sims v. BB&T Corp.*, No. 15-1705, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019); *Spano v. Boeing Co.*, No. 06-743, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016),

*Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015.) In each of the cases cited above, the district courts awarded one-third of the settlement to cover attorney's fees. This great weight of authority more than demonstrates that a one-third fee is justified in this case.

The size and complexity of the issues before the Court, and the novelty of the litigated claims involving a 403(b) plan, support the one-third fee sought. In sum, the amount of fees and costs sought here total one third of the Settlement common fund. One-third of a common fund is in line with fees generally awarded in class action cases, and for settlements of this amount and, pursuant to the factors discussed above, is reasonable and should be awarded.

## IV.     COST ANALYSIS.

Pursuant to the Settlement Agreement, Plaintiffs are entitled to recover their costs. Class Counsel seek $8,051.35 in reimbursable costs. "Courts typically allow counsel to recover their reasonable out-of-pocket expenses. Indeed, courts normally grant expense requests in common fund as a matter of course." *Id*. at *6; *see also Dowdell v. City of Apopka*, 698 F.2d 1181, 1191-92 (11th Cir. 1983). Rule 54 "creates a presumption in favor of awarding costs to the prevailing party which [the opposing party] must overcome." *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991). While Plaintiffs' requests may include costs not typically contemplated by 28 U.S.C. § 1920, where no objection is filed, the Court "is not obliged to review the taxation of costs." *Johnson v. Mortham*, 173 F.R.D. 313, 316 (N.D. Fla. 1997). Having reviewed the sworn declarations filed by Class Counsel attesting to and describing the costs incurred, the undersigned finds that the costs sought by Class Counsel are reasonable and should be awarded from the common fund. *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017).

Accordingly, it is **RECOMMENDED**:

1. Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs (ECF No. 102) be **APPROVED**.

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Any response shall be filed within three (3) days of the objections. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**DONE and SUBMITTED** at Fort Lauderdale, Florida, this 28th day of May 2025.

**Patrick M. Hunt**
**United States Magistrate Judge**

Copies furnished to:
The Honorable William P. Dimitrouleas
Counsel of Record